## Williams Estate

*John B. Pearson*, for exceptant.
*Arthur L. Goldberg*, contra.

SWOPE, J., June 20, 1963.—This matter comes before the court on exceptions filed by Ben G. Helsel to the schedule of distribution attached to the first and partial account of Arthur L. Goldberg and Dauphin Deposit Trust Company, executors under the will of Lew Williams, deceased.

During his lifetime, the decedent owned certain real estate in the City of Harrisburg. Most of these properties were located in the 1200 block of Seventh Street and vicinity. A number of the properties were owned in partnership with the estate of Jacob Friedberg, a former partner of the decedent. Others were owned as tenants by the entireties with Edith Williams, his wife.

In December, 1956, an option agreement was executed between Lew Williams and Ben Helsel. In this agreement, Lew Williams agreed to convey certain of the properties owned by him to Ben G. Helsel, agent,

or his nominee. For this option Ben Helsel paid to Lew Williams the sum of $2,500. Helsel was, in fact, acting as agent for one Charles G. Fry, Jr., to whom all of his interest in the agreement of option was subsequently assigned. Fry, in turn, paid Helsel the sum of $2,500 for his interest in the option.

At this point in their negotiations, the parties learned that the Harrisburg Redevelopment Authority intended to take the optioned properties as part of the uptown redevelopment area. In light of this development, the option was cancelled by mutual agreement of the parties. Thereupon, Helsel returned to Mr. Fry the $2,500 previously advanced to him by Fry. Having done this, Helsel then sought to have repaid to himself by Lew Williams the $2,500 initially advanced by Helsel to Williams in the earlier stages of their negotiations.

It is Helsel's contention that in a conversation between himself and Williams, prior to Williams death, the decedent effected an equitable assignment of so much of the proceeds of whatever amount resulted from the Redevelopment Authority's taking of the properties as would be needed to satisfy Helsel's claim. Since his death, the executors of Lew Williams have received from the Redevelopment Authority the sum of $17,588.89, as decedent's share of the proceeds of the sale of the properties in question to the authority.

Lew Williams estate is insolvent. His executors recognize the claim of Ben G. Helsel in the amount of $2,500 as a valid claim against the estate. They propose, however, in their suggested schedule of distribution, that this claim must be classed with all other claims of general creditors and paid on a pro rata basis along with all other claims in that category.

Helsel contends, on the other hand, that on the basis of the alleged equitable assignments, his claim must receive preferential treatment and be satisfied ahead

of those of general creditors of the decedent. He avers that "during his lifetime, the decedent had specifically agreed that he would repay the $2500 advanced by Ben G. Helsel out of the proceeds of this sale."

In Purman Estate, 358 Pa. 187 (1948), the Supreme Court of this Commonwealth in delineating the requisites for the establishment of an equitable assignment, stated at page 190:

". . . An equitable assignment is 'Any order, writing, or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest, although not amounting to a legal assignment. . . .' See: 6 C.J.S. 1101, section 58. In such a situation, the assignor must not retain any control over the fund, any authority to collect, or any power of revocation: 4 Amer. Jur. 288, section 76. The test of whether an agreement to pay or appropriate amounts to an equitable assignment is whether the transfer was of such a character that the fund holder could safely pay, or be compelled to do so, even though he is forbidden to do so by the assignor."

After a careful review of the entire record in this case, including the record of hearing, the only evidence which might be taken in any way to support the claim of an equitable assignment as advanced by the exceptant is the testimony of one, Josephine Felton, who had been employed by Lew Williams during his lifetime. Mrs. Felton testified that she was in the office of Mr. Williams on one occasion when Mr. Helsel and Mr. Williams were discussing the repayment of the sum in question. She testified that in answer to Mr. Helsel's demand, "Mr. Williams told Mr. Helsel, when he received this money from the housing development he would pay him the $2500.00." (N.T. 27).

Although some question has been raised as to the credibility of Mrs. Felton, we are unable to find any-

thing in support thereof in the record, or in our observance of her as a witness. Taking her testimony as true and correct, however, we are firmly of the opinion that the statement of Mr. Williams, as testified to by her, does not nearly meet the strict requirements prescribed in Purman Estate, supra., for the establishment of an equitable assignment. We can find nothing in the statement of Mr. Williams which in anyway constitutes a promise on his part to pay *out of* any particular fund. Even though the decedent, in his remark, had reference to the fund which he fully expected would arise out of his negotiations with the Redevelopment Authority, his statement, at best, merely established *a time when* he felt he would be in a position with regard to his affairs generally to repay Mr. Helsel the money which he owed to him.

We find, without hesitation, that the claim of an equitable assignment has not been satisfactorily established by the exceptant. We point out that, even if there were some doubt as to whether or not the claim of equitable assignment had been made out, this claim falls additionally into that category of claims against the estate of a decedent, based upon oral statements of the decedent during his lifetime, which can be established only by the clearest, most precise and definite evidence. We are certain that the evidence in support of the claim does not meet these latter requirements, since, in our opinion, it even failed to meet the requirements for the establishment of an equitable assignment in an ordinary case. Accordingly, we make the following

### Order

And now, June 20, 1963, exceptions filed by Ben G. Helsel, Jr., to the first and partial account of the executors of Lew Williams, deceased, are herewith dismissed.